IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jesus Isabel and Demetrio Hueramo, | ) |
| Plaintiffs, | ) No. 20-cv-1223 |
| v. | ) Judge John J. Tharp, Jr. |
| Muneeba Maniar, Saheem Baluch, Com2 Computers and Technology, LLC, and Round 2, LLC, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jesus Isabel and Demetrio Hueramo bring this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.* Compl. ¶ 1, ECF No. 1. Isabel and Hueramo allege that, in violation of those statutes, defendants Muneeba Maniar, Saheem Baluch, Com2 Computers and Technology, LLC, and Round 2, LLC failed to pay them overtime for hours worked in excess of forty hours in a work week and failed to pay them all wages earned for time worked. *Id.*

Defendants Maniar, Baluch, and Com2 now move for summary judgment pursuant to Rule 56 as to all the plaintiffs' claims, and the plaintiffs move for partial summary judgment on the sole issues of: (1) their status as "employees" under the FLSA and IMWL; (2) the status of defendants Com2 and Baluch as "employers" under the FLSA and IMWL; and (3) defendants' liability for overtime violations under the FLSA and IMWL. Because the current record before the Court has significant evidentiary gaps and disputes over material facts, the Court denies plaintiffs' partial motion for summary judgment and, in part, defendants' motion for summary judgment. The Court

grants summary judgment only for defendant Maniar because plaintiffs have failed to set forth any facts allowing them to establish her liability.

## BACKGROUND

There are very few undisputed facts in this case. The overview below sets forth the parties' respective versions of events and how they diverge.

Defendant Com2 is an Illinois limited liability company that recycles electronic goods. Defs.' Statement of Facts ¶ 1, ECF No. 73-1 (hereinafter, "DSOF"). Defendants Baloch and Maniar are the managers of Com2. *Id*. ¶ 2. Defendant Baluch managed Com2's day-to-day affairs, and had authority to determine employee compensation, direct and supervise employee work, and hire and fire employees. Pls.' Statement of Facts ¶ 11 (hereinafter, "PSOF"); App. to PSOF 82, ECF No. 75 (deposition of defendant Baluch). Defendant Round 2, which dissolved in June 2018, was also an Illinois limited liability company specializing in electronics recycling. DSOF ¶ 3. Despite naming it as a defendant in this case, plaintiffs never served Round 2. *Id*. ¶ 4. Round 2 never filed an appearance in this case, nor did it seek or produce any discovery.[1]

Plaintiffs assert that from February 2017 through October 2018, they worked at a warehouse in Marengo, Illinois "managed and/or operated" by Com2. PSOF ¶¶ 1, 6-7 (hereinafter, "PSOF"). Isabel, with Hueramo's assistance, used a forklift to move crushed computer monitors into and out of trucks driving from the Marengo warehouse to Com2's headquarters in Carol Stream, Illinois. *Id*. ¶ 2. During this period, Isabel and Hueramo say they were supervised by a

---

[1] The plaintiffs deny that Round 2 has neither appeared nor been served, arguing that all four defendants initially filed an appearance, but later amended to remove that appearance. Pls.' Resp. to DSOF ¶ 4. They are mistaken. Early in this litigation, defense counsel appeared on behalf of Baluch, Maniar, and Com2. ECF No. 16. Defense counsel later filed an answer to the complaint on behalf of all four defendants (ECF No. 20), which, with the Court's leave, they later amended to omit Round 2 (ECF Nos. 26, 28-29). Regardless, plaintiffs do not appear to have ever even issued a summons to Round 2.

Com2 employee named Danao Luna. Pls.' Statement of Add'l Facts ¶ 2 (hereinafter, "PSOAF"). However, Isabel also testified that Luna did not usually supervise him on site at the warehouse, and that he would receive instructions as to the next day's truck arrivals from Com2 either the morning of his workday, or the evening before. PSOF ¶ 10; App. to PSOF 79, ECF No. 75 (deposition of plaintiff Isabel). Each day, plaintiffs say, they would arrive at the warehouse at around 7:00 A.M. and leave anywhere between 3:00 and 7:00 P.M., depending on the day's demands. PSOF ¶ 9. Isabel testified that even when not receiving truck deliveries or loading trucks, he was obligated "to stay in the warehouse and do my other responsibilities." App. to PSOF 80. There is no evidence of record as to what Isabel's "other responsibilities" were.

When he first began working at the warehouse, Isabel recalled using timesheets provided by Com2 to record his working hours, which he then submitted to Com2. PSOF ¶ 6. Later, in or around November 2017, he would handwrite his and Hueramo's hours on a sheet of paper and send them to Luna via WhatsApp, along with pictures of the work they had completed. *Id.* ¶ 7; App. to PSOF 72. Plaintiffs were typically paid in cash, though Plaintiff Isabel testified that he was paid with checks on occasion. App. to PSOF 73. Isabel also testified that he would either be handed payment by Luna, another Com2 supervisor named Mohammad Younus, or that he would go to the Carol Springs headquarters to collect payment himself. App. to PSOF 71. Plaintiffs allege in their complaint that their hourly wages were $12.50 per hour for Isabel, and $10.50 per hour for Hueramo, and that they routinely worked more than 40 hours per week for defendants. Compl. ¶ 16; PSOF ¶ 3.[2] Com2 did not put either plaintiff on its payroll, and it has no records of any payments made to Isabel or Hueramo. DSOF ¶¶ 14, 16.

---

[2] Plaintiffs' complaint alleges Isabel was paid $12.50 an hour, and Hueramo was paid $10.50 per hour. Isabel testified that Hueramo was paid "around $10.50 or $11" per hour, which

3

As indicated above, Com2, Baluch, and Maniar concede almost none of the core facts set forth by plaintiffs in their motion for summary judgment. For their part, the defendants[3] assert that until July 2018, Round 2 operated the Marengo warehouse, at which point Round 2 dissolved and Com2 took over. DSOF ¶ 6. Round 2, according to the defendants, is a completely separate entity from Com2, with no common owners, officers, or managers. *Id*. ¶ 5. Baluch, the manager of Com2, testified that for "a couple" of years, possibly between 2015 and 2017, Round 2 was essentially a Com2 client, and paid Com2 to handle excess electronics that Round 2 itself could not process for recycling. App. to PSOF 82. No written contracts existed between Round 2 and Com2 for those services, though Baluch testified that there were "verbal" contracts between the two companies. *Id*. at 83. Baluch's testimony is somewhat muddled on the particulars of the transition of the Marengo warehouse from Round 2 to Com2, but he testified that at some point, Round 2 informed Com2 that it was leaving the Marengo warehouse and asked Com2 to process the material remaining there. *Id.* at 86. Com2 told Round 2 to leave the material in the warehouse and that Com2 would process it slowly, as its production capacity allowed. *Id*. Round 2 and Com2 did not enter into any purchase agreement or lease when Com2 took over the warehouse operations. DSOF ¶ 7.

Com2 did not plan to operate the Marengo warehouse for very long, and so decided to "allow the former workers of defendant [Round 2] who worked at the Marengo warehouse to continue working for defendant Com2 for a short duration." *Id*. ¶¶ 8-9. Plaintiffs, presumably, were two of those employees. Com2 admits that plaintiff Isabel, at least, worked for Com2 from

---

was "about two dollars less than I was getting paid." App. to PSOF 79. None of those rates are set forth in Plaintiffs' PSOF or its summary judgment briefing.

[3] For efficiency, the Court will refer to defendants Baluch, Maniar, and Com2 collectively as "defendants," though notes the reference does not encompass defendant Round 2.

July 2018 until October 2018, but argues that the plaintiffs have failed to set forward any evidence that they worked for Com2 prior to July 2018, when they say the warehouse was run by Round 2. *Id*. ¶¶ 11-13; Defs.' Mot. for Summ. J. 3, ECF No. 73. Importantly, defendants point to Bank of America records, supported by a custodial declaration, showing 46 checks made out by Round 2 to Isabel and Hueramo between February 28, 2017 and March 22, 2018, ranging from $729.75 to $1,943.75 each. DSOF ¶ 19; Ex. I to DSOF. Plaintiffs, for their part, contend that Com2 controlled Round 2, and that Baluch ran Round 2 from behind a frontman, possibly to "skirt regulations." Pls.' Resp. to DSOF ¶ 5.

Com2 further argues that even after July 2018, Isabel effectively freelanced in the Marengo warehouse as an independent contractor. Com2 did not supervise him on a daily basis, or subject him to any Com2 rules or policies. PSOF ¶¶ 12-13. Inconsistent with Isabel's recollection, supervisor Younus testified that he, and not Luna, told Isabel what was needed at the warehouse, and that Isabel would inform him (by phone, he recalled) the amount he was owed by Com2. Ex. B to DSOF, 9:21-10:2, 26:3-27:20 (deposition of Mohammad Younus). Younus would tell his general manager the amount, and the manager would hand Younus cash to transfer to Isabel. *Id*. at 10:24-11:22. Younus, in turn, would hand the cash to a Com2 truck driver who happened to be headed to the Marengo warehouse. *Id*. at 13:8-12. Younus did not recall Luna having any role in paying Isabel, testifying that "as long as [he] was there," he was the only person who handled the delivery of items to and from the warehouse, though it is not clear from the testimony when Younus was working with Isabel. *Id*. at 30:2-20. During a short and seemingly chaotic deposition, Luna testified that he had never seen Isabel before, and had only spoken to him on the phone once to discuss an issue related to money. App. to Pls.' Resp. to DSOF 11, ECF No. 87-1.

5

Notwithstanding these inconsistencies and disputes, both parties have moved for summary judgment.

## DISCUSSION

The plaintiffs have moved for summary judgment on the issues of their status as "employees," and defendant Com2 and Baluch' status as "employers," under the FLSA and IMWL, and defendants Com2 and Baluch's liability for overtime violations under those statutes.[4] The defendants seek summary judgment as to *all* plaintiffs' claims against them, including defendant Maniar's liability as to overtime violations, and all three defendants' liability as to minimum wage violations.

The Court will consider the plaintiffs' FLSA claims first.

### a. The Fair Labor Standards Act

The FLSA sets forth two main requirements designed to protect workers from overwork and underpay: a minimum wage requirement (29 U.S.C. § 206) and a requirement that employers pay workers in any "enterprise engaged in commerce" at one and one-half times their regular pay rate for any hours worked in excess of forty per week (29 U.S.C. § 207). Exceptions to these requirements abound in the statute and related regulations. Most relevant here, the FLSA's minimum wage and overtime protections apply only to "covered employees" and not to "independent contractors." 29 C.F.R. § 795.105(a).

The FLSA defines an "employee" who is entitled to the statute's protections "in an unhelpful and circular fashion as 'any individual employed by an employer.'" *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016) (quoting 29 U.S.C. § 203(e)(1)).

---

[4] As a preliminary matter, because the plaintiffs failed to serve Round 2 in a timely manner, the Court dismisses their claims against Round 2 pursuant to Rule 4(m). That leaves us to assess the claims only against Com2, Baluch, and Maniar.

Generally, courts must construe the terms employee and employer "expansively." *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) (citations omitted). To determine whether a plaintiff qualifies as an employee under the FLSA, courts must assess the "economic reality of the working relationship by examining the totality of the circumstances." *Simpkins v. DuPage Hous. Auth..*, 893 F.3d 962, 965 (7th Cir. 2018). "As a matter of economic reality," employees, as opposed to independent contractors, are "dependent upon the business to which they render service." *Id*. at 964 (quoting *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987)).

In *Lauritzen*, the Court of Appeals articulated several factors which may help in determining whether an employer-employee relationship exists between plaintiff and defendant, including: (1) the employer's control over "the manner in which the work is to be performed"; (2) the employee's opportunity for profit or loss depending on their managerial skill; (3) the employee's investment in equipment or materials required for their task; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service provided is an "integral part of the alleged employer's business." *Lauritzen*, 835 F.2d at 1534-35. No one factor is dispositive or controlling, and all may be disregarded if they "fail to capture the true nature of the relationship" between plaintiffs and defendants. *Berger*, 843 F.3d at 291 (quoting *Vanskike*, 974 F.2d at 809).

### i. Whether defendants are "employers" as defined by the FLSA

The plaintiffs have moved for summary judgment as to defendants Com2 and Baluch's liability under the FLSA, but not as to defendant Maniar's liability. The defendants seek summary judgment in favor of all of the remaining defendants, including Maniar. The parties appear to be talking past each other on the issue of which defendant is an "employer" under the FLSA. In their

response to the plaintiff's partial motion, defendants do not dispute that Com2 and Baluch are "employers" (at least not after July 2018) under the FLSA and focus instead on their arguments that (1) prior to July 2018, Round 2 was the relevant alleged employer, and (2) plaintiffs have not set forth evidence sufficient to show that they were "employees" entitled to the FLSA's minimum wage and overtime protections. Conversely, the plaintiffs do not offer any argument in support of defendant Maniar's liability in their response to defendant's full motion for summary judgment. In the interest of clarifying the relevant plaintiff-defendant relationships, the Court will address two threshold issues.

*Defendant Maniar*

"Courts have found that a determination of whether an individual is liable under the FLSA depends not upon whether the individual controlled every aspect of the employees' conduct, but upon whether the individual had control over the alleged FLSA violation." *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011) (citations omitted). While individuals need not manage employees directly or on a daily basis for courts to determine they are "employers" under the statute, courts have held that certain factors, such as financial control of the relevant company, oversight over its day-to-day operations, and the hiring of managerial staff may weigh in favor of holding an individual liable for FLSA violations. *Id*. at 786-87 (compiling cases). Here, the Court cannot assess any of those factors or any others with respect to defendant Maniar because plaintiffs have offered no evidence of her potential liability. Defendant Baluch briefly testified that Muneeba Maniar is both a partner in Com2 and his wife, and that she oversees "compliance," which he described as encompassing any certifications the company needs or contracts into which it enters. App. to PSOF 88. But the plaintiffs apparently did not depose Maniar, Maniar submitted no affidavit, and no other witnesses—including the plaintiffs—testified to her role in hiring, payment,

personnel management, or any other aspects of Com2's business that may connect her to potential FLSA violations. (In contrast, the plaintiffs expressly argue that Baluch had hiring and firing authority as well as financial oversight of Com2). There are no genuine disputes of material facts regarding defendant Maniar because there are no material facts. Plaintiffs have simply failed to put forth any evidence that would allow a reasonable finder of fact to rule against defendant Maniar. The Court therefore grants the defendant's motion for summary judgment as to the plaintiffs' claims against defendant Maniar.

*Relevant employer prior to July 2018*

The defendants argue that plaintiffs did not work for them before July 2018, the point at which they took over the Marengo warehouse operations from Round 2. Prior to that, they contend, Round 2 would have been the relevant employer. The plaintiffs argue that Com2 is liable for the full period of alleged overtime violations (February 2017 through October 2018) because Round 2 and Com2 are effectively the same company, under Baluch's control.

The record does not support that contention. The defendants have submitted an affidavit and a record from the Illinois Secretary of State indicating that while Com2 may have worked with Round 2, Round 2 is and was an entirely separate entity under separate management. Further, Baluch testified that Round 2 was merely a client of Com2. App. to PSOF 82. In response, citing to plaintiff Isabel's deposition, the plaintiffs assert that "Danao Luna … told Plaintiff Isabel that Com2 set up Round [2] to skirt regulations and to store product and try to limit its liability." Pls.' Resp. to DSOF ¶ 5. But Isabel's testimony as to what Luna told him regarding Round 2 is hearsay, and the Court cannot take it into account for purposes of summary judgment. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (inadmissible hearsay may not be considered on summary judgment). Further, at no point during Mr. Luna's *two* depositions did plaintiffs' counsel ask him

anything about Round 2, his relationship to it, or his understanding of its relationship to Com2. *See* App. to Pls.' Resp. to DSOF, 2-15, ECF No. 87-1 (depositions of Danao Luna). The plaintiffs acknowledge that Round 2 paid them through January 2018,[5] but argue that Round 2 did not direct their work—Com2 did.[6] Pls.' Resp. to DSOF ¶ 21. In support of that argument, plaintiffs mainly rely on testimony from Isabel that his work assignments and pay were facilitated by Luna, testimony from Luna that he was a Com2 employee during the time plaintiffs worked in the warehouse and knew Isabel "over the phone," and on somewhat conflicting testimony from supervisor Younus that he facilitated Isabel's pay. PSOF ¶ 8; PSOAF ¶ 2.[7] Isabel's testimony is contradicted by Luna's testimony that he only spoke to Isabel once via telephone, and Younus did not testify as to what period of time, or for how long, he was directing and paying Isabel. But the Court cannot resolve this dispute on summary judgment. The factual disputes over who plaintiffs worked for prior to July 2018 are too numerous, and too fundamental, to grant either party summary judgment as to that issue. Plaintiffs' motion, insofar as it seeks summary judgment as to Com2 and Baluch's status as employers prior to July 2018, and therefore their liability for overtime

---

[5] The checks offered into evidence by defendants are dated through March 2018, but plaintiffs' response only acknowledges their existence through January 2018.

[6] The plaintiffs do not argue that Com2 and Round2 were joint employers. *See Moldenhauser v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 643-44 (7th Cir. 2008).

[7] In support of their contention that Com2 effectively controlled the Marengo warehouse, plaintiffs also attach to their Response to Defendants' Rule 56.1 Statement of Undisputed Material Facts a letter from plaintiffs' counsel and a subpoena issued to Hicksgas seeking records of Com2 ordering propane for delivery to the Marengo warehouse. Hicksgas appears to have supplied some via email, reflecting orders placed from February 2018 to October 2018. Defendants object to this evidence as inadmissible, arguing that (1) the letter and email are hearsay; (2) they never received notice of the subpoena prior to its issuance; and (3) the records themselves are not authenticated. The Court agrees with defendants as to the inadmissibility of the subpoena, letter, and accompanying records, but also notes that even in admissible form, records indicating that Com2 ordered propane to the Marengo warehouse would not in any way support plaintiffs' argument that Com2 controlled plaintiffs' work.

10

violations prior to that time, is **denied**. Similarly, defendants' motion for summary judgment is **denied** on the issue of defendants Com2 and Baluch's liability prior to July 2018.

### ii. Whether plaintiffs were "employees" as defined by the FLSA

The Court turns now to the question of whether, from July 2018 to October 2018, plaintiffs qualified as defendants' "employees," which is a question of law. *See Lauritzen*, 835 F.2d at 1535.

As a threshold matter, the defendants argue that they are entitled to summary judgment as to Hueramo's claims because during his deposition, Hueramo stated that he had only worked for three entities since 2016: a staffing agency, a company called "La Bartlett," and a company called "La Connect." Defs.' Mot. for Summ. J. 4. Defendants say this precludes any reasonable factfinder from ruling in favor of plaintiff Hueramo. However, Hueramo's testimony contradicts other evidence in the record. For example, Isabel testified that Hueramo worked with him during the entirety of his tenure at the Marengo warehouse, and that they worked the same hours.[8] Half of the Round 2 checks submitted into evidence by defendants are made out to Hueramo. The plaintiffs have submitted no follow-up from Hueramo in the form of an affidavit or other evidence to reconcile or explain Hueramo's employment history, but more significantly, defense counsel—mystifyingly—did not ask Hueramo anything about Com2, Round 2, or the Marengo warehouse during Hueramo's short and apparently contentious deposition. Ex. J to DSOF (deposition of plaintiff Hueramo). It is hard to think of a more material factual dispute than whether or not plaintiff Hueramo worked for the entities he is now suing for FLSA violations. A trial is needed to assess the evidence involving plaintiff Hueramo. The Court therefore **denies** both plaintiffs' and

---

[8] In addition, Younus testified that it was possible Isabel had someone helping him, but he could not recall or be sure.

11

defendants' motions for summary judgment as to plaintiff Hueramo's claims and will focus its analysis on plaintiff Isabel's claims.

### 1. Defendants' control over Isabel's work

As to the first *Lauritzen* factor, it is undisputed that, at least after July 2018, some employee from Com2, whether Luna, Younus, or someone else entirely, directed Isabel's forklift work, informing him of upcoming truck arrivals that would require the movement of material into and out of the Marengo warehouse. Isabel, at least, testifies that he regularly texted Luna with photos of his work to verify that the work was complete, and to receive any follow-up instructions as to next steps. App. to PSOF 72. As discussed above, Luna disputes this. Isabel also testified that his hours were from 7:00 AM to any time between 3:00 PM and 7:00 PM, depending on when the day's work was complete, and that when he was not handling deliveries, he was obligated to stay in the warehouse and handle "other responsibilities." App. to PSOF 80. Neither who prescribed those hours nor what those other responsibilities were is clear from the record. Further, Isabel testified that he was paid about $12.50 or $13.00 an hour. App. to PSOF 79. While Isabel asserts that Com2 set that wage, he cites to nothing in the record to support that contention. Com2 or Round 2 could have set the rate, or it could have simply been the rate Isabel charged for his work. Younus testified that Isabel would call him and tell him what he was owed, while Baluch (Com2's designated 30(b)(6) deponent) testified that he knew nothing of Isabel's pay, and that Com2's general manager would have handled such matters. Ex. B to DSOF 9:24-10:2; App. to PSOF 86. It does not appear that the general manager was deposed.

The defendants point to the fact that no Com2 employee directly supervised Isabel on-site and that Isabel could perform his duties as he saw fit. But the more relevant inquiry is the extent to which Com2 controlled what those duties were, when they were performed, and whether Com2

had the power to terminate Isabel if his work was not meeting their expectations. *See Bulaj v. Wilmette Real Est. & Mgmt. Co.*, No. 09-cv-06263, 2010 WL 4237851, at *6 (N.D. Ill. Oct. 21, 2010) (defendant real estate management company exercised control over plaintiff janitor's work because it set his work schedule, assigned incidental duties without extra compensation, monitored the quality of his work, and had authority to terminate him, even though the plaintiff often worked independently); *Arunin v. Oasis Chi., Inc.*, No. 14-cv-06870, 2016 WL 851989, at *3 (N.D. Ill. Mar. 4, 2016) (work performed by plaintiff food delivery drivers for defendant restaurant group was subject to defendant's control because defendant set the drivers' shift schedules, determined the amount charged as a delivery fee, and required the drivers to perform extra tasks within the restaurant).

Defendants cite to *Compton v. DuPage County Health Department* to support their contention that an employer must control "the manner in which the work is to be performed" by the employee. 426 F. Supp. 3d 539, 547-548 (N.D. Ill. 2019) (quoting *Lauritzen*, 835 F.2d at 1535). But in *Compton*, the plaintiff home respite worker was merely placed into a client's home by the defendant county health department, which administered a program providing home-based support services. *Id*. at 543-44. The plaintiff arranged her schedule with the client directly, decided how best to provide services autonomously, and communicated with the county infrequently. *Id*. at 547-48. If the client was dissatisfied with those services, they could ask the county for a new respite worker, and the county would oblige, but not fire the plaintiff. *Id*. at 549. The Court held the plaintiff was not an employee but an independent contractor for FLSA purposes. *Id*. at 550. The relationship between Isabel and Com2, however, does not appear to have been nearly as aloof as the relationship between the plaintiff and defendant in *Compton*. Here, at least according to Isabel, Com2 communicated with Isabel regularly to dictate the nature of his work for the day. While the

13

defendants argue Isabel was not subject to their policies or disciplinary measures, it does not stand to reason they could not fire Isabel if they were dissatisfied with his work—it is at least undisputed that they were in control of the warehouse after July 2018.

The record, however, lacks detail which would be helpful in determining the "extent and effect of [plaintiff's] autonomy" in the warehouse, including the full scope of his duties in the warehouse day-to-day, who determined his hourly rate, and whether Com2 maintained any kind of quality control over his work. *See Simpkins*, 893 F.3d at 966-67 (district court erred in granting summary judgment to defendant where disputes remained over who set plaintiff's schedule and how much control defendants had over the tasks they assigned plaintiff). Moreover, based on the record before the Court, the nature of the instructions that Isabel received from Com2 each day is murky at best and disputed at worst. Isabel testified that he texted with Luna regularly via WhatsApp about the completion of his tasks and any necessary follow-up; Luna had no such memory. Younus recalled speaking to Isabel about tasks they needed done at the warehouse, but never communicating via text or WhatsApp; Isabel did not mention receiving instruction from Younus. Isabel referenced standing obligations that required him to be in the warehouse even when not using the forklift, but offered no detail, nor did defense counsel ask for any. As it stands, there are simply not enough undisputed material facts to determine which party this factor favors.

> **2. Isabel's potential for profit or loss depending on his managerial skill**
> **3. Isabel's investment in equipment or materials**
> **4. Whether the work performed requires a special skill**

The next few *Lauritzen* factors favor Isabel. As to the second, there is no indication that "managerial skill" could have led to increased profits or loss to Isabel. Defendants assigned Isabel a task, and he performed it for an hourly wage. No "initiative, judgment, [or] energy" on Isabel's part could have meaningfully increased his pay, nor did he risk any loss of investment. *Arunin*,

14

2016 WL 851989 at *4 (quoting *United States v. Silk*, 331 U.S. 704, 716 (1947)). As to the third, there is no evidence Isabel made any capital investment related to his work at the warehouse, either by purchasing equipment or hiring employees. The fourth factor looks to whether a plaintiff has "highly specialized job skills [to] support independent contractor classification." *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1077 (N.D. Ill. 2014). Isabel did not, and defendants do not argue he did. Isabel testified he received initial training in the warehouse, presumably to learn the functions of the forklift and the warehouse's other operations, but the fact of training alone does not make the underlying work specialized. *See id.* at 1078.

### 5. The degree of permanency and duration of the working relationship

The fifth *Lauritzen* factor looks to the permanence of the working relationship. "The more permanent the relationship, the more likely the worker is to be an employee." *Id*. (quoting *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 309 (4th Cir. 2006)). Permanence is in some sense a misnomer for this factor, which in practice looks to the degree of exclusivity between alleged employee and employer, even for short periods of time. *See Lauritzen*, 835 F.2d at 1537 ("[H]owever temporary the relationship may be[, ]it is permanent and exclusive for the duration of that harvest season"); *Callahan v. City of Chicago*, 78 F. Supp. 3d 791, 813 (N.D. Ill. 2015) ("In assessing the permanency of a working relationship, it does not matter that a given relationship is temporary. Temporary work relationships—e.g., seasonal work relationships—may be permanent and exclusive for their duration, and thus 'permanent' under *Lauritzen*.") For that reason, defendants' argument that there was no long-term relationship between Com2 and Isabel is unpersuasive. The undisputed facts construed favorably to Isabel indicate that from the period between July 2018 and October 2018, Com2 set Isabel's daily work schedule and tasks and presumably expected him to be available to complete those tasks until they decided to terminate

15

the relationship or exit the Marengo warehouse entirely. Such an arrangement weighs in favor of Isabel's employee status. *See Arunin*, 2016 WL 851989, at *4 ("[P]laintiffs are hired and work their assigned shifts until either they or [the defendant] decides to terminate the relationship. This factor weighs in favor of plaintiffs being employees since they are hired to do the job indefinitely.")

### 6. Whether the work performed is an integral part of the alleged employer's business

Finally, individuals are more likely employees "if they perform the primary work of the alleged employer." *Harper v. Wilson*, 302 F. Supp. 2d 873, 879 (N.D. Ill. 2004) (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1385 (3d Cir. 1985)). Defendants do not address this factor—whether Isabel's work was integral to their business—in their motion for summary judgment. Plaintiffs argue that because Com2 is in the business of electronics recycling, and Isabel performed work unloading, storing, and retrieving material to be recycled, Isabel's work was integral to Com2's business. The Court agrees. While Isabel's work may have been a step removed from the actual recycling process Com2 performs, he facilitated that process, and without Isabel's work at the warehouse, Com2 would not have been able to recycle the material stored there. His role was, in some respects, similar to that of the plaintiff migrant workers in *Lauritzen*, who harvested pickles for the defendant pickle business, but were themselves not involved in the pickling. 835 F.2d at 1537-38.

For the period between July 2018 and October 2018, the undisputed material facts, such as they are, are such that a reasonable factfinder could determine Isabel was an employee of Com2 and Baluch. For that reason, defendants' motion for summary judgment on this issue is **denied**.

Whether or not Isabel necessarily would, based on the current record, convince a reasonable factfinder of his employee status is a different matter. While the majority of *Lauritzen* factors line up in favor of Isabel at the moment, the first—the degree of control exercised by

16

defendants over Isabel's work—is a crucial one, and there appears to be substantial daylight between the parties' perceptions of how and whether Isabel was interacting with defendants each workday. Defendants' version of events suggests that they had no expectations of Isabel at all, and that he was free to perform his work in any manner he saw fit. Isabel, on the other hand, insists he was supervised by Com2 employees and was "obligated" to be at the warehouse all day attending to his various responsibilities. There are plenty of holes in both stories—too many, in fact, to allow the Court to assess the economic reality of the relationship between Isabel and defendants for purposes of summary judgment. *See Kibbons v. Double Jack Props., LLC*, No. 17-cv-03017, 2020 WL 1322845, at *15 (N.D. Ill. Mar. 20, 2020) (denying cross-motions for summary judgment on plaintiff's "employee" status where disputes existed over who set plaintiff's schedule and how much autonomy plaintiff had over his work). The Court therefore also **denies** Isabel's partial motion for summary judgment on (1) his status as an "employee" as defined by the FLSA and (2) defendants Com2 and Baluch's liability for overtime violations under the FLSA from July 2018 to October 2018. Because plaintiffs cannot prevail on their motion for summary judgment as to those issues, it is unnecessary for the Court to separately address the other issue on which plaintiffs seek summary judgment: whether Com2 or Baluch were "employers" as defined by the FLSA from July 2018 to October 2018.

        iii.  **Damages**

It is also unnecessary to address defendants' argument that plaintiffs have failed to put forth evidence sufficient to establish damages from the alleged FLSA violations. The Court notes that employers are required by the FLSA to "make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of [their] employment..." 29 U.S.C. § 211(c). Where an employer abandons this statutory duty, "[t]he burden

17

then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to [negate] the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254(a). If the employer fails to do so, courts may award approximate damages based on the employee's evidence alone. *See Godinez v. Classic Realty Group-IL, Inc.*, No. 22-cv-01400, 2024 WL 3442960, at *8 (N.D. Ill. July 16, 2024). That evidence may consist entirely of an employee's sworn recollections as to their regular hours and overtime, so long as those recollections allow the factfinder to determine "the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687; *see also Bum Hoon Lee v. BK Schaumburg Inc.*, No. 18-cv-03593, 2020 WL 3577994, at *5 (N.D. Ill. July 1, 2018) ("[A]n FLSA plaintiff need not provide documentary evidence of definitive calculations of hours worked—his or her own testimony based on memory is enough to survive summary judgment if it is sufficiently specific").

Again, the Court need not assess the sufficiency of Isabel's estimated damages because "[t]he *Mt. Clemens* rule applies … only once the court finds that there was an employer-employee relationship to begin with." *Godinez*, 2024 WL 3442960 at *8 (finding arguments regarding damages "premature" where genuine disputes of material fact remained on that issue). If plaintiffs can ultimately establish at trial that they were "employees" of defendants as defined by the FLSA, the Court can assess the parties' claims with respect to damages. Until then, however, the Court **denies** defendant's motion for summary judgment on the issue of damages.

    b. **The Illinois Minimum Wage Act**

Plaintiffs have brought claims for minimum wage and overtime violations pursuant to the IMWL's minimum wage and overtime provisions. 820 Ill. Comp. Stat. §§ 105/4(a)(1)-105/4a(1).

18

Defendants now seek summary judgment on those claims, and plaintiffs seek partial summary judgment on their status as employees under the statute, defendant Com2 and Baluch's status as employers under the statute, and defendant Com2 and Baluch's liability for overtime violations under the statute.

The IMWL and FLSA's minimum wage and overtime requirements, as well as their definitions of "employer" and "employee," parallel one another, and the same analysis generally applies to both statutes. *See Jaworski v. Master Hand Contractors, Inc.*, No. 09-cv-07255, 2013 WL 1283534, at *7 (N.D. Ill. Mar. 27, 2013); *Bulaj*, 2010 WL 4237851 at *10. The Illinois Administrative Code, in fact, sets forth a six-factor test for determining employee status that parallels the *Lauritzen* factors. Ill. Admin. Code tit. 56, §§ 210.110, 210.120. *See also Jaworski*, 2013 WL 1283534, at *7. Given the parallel requirements for summary judgment of the FLSA and IMWL, the same analysis applied to plaintiffs' FLSA claims also applies here. Defendants' motion for summary judgment on plaintiff's IMWL claims is therefore denied except as to the claims brought against defendant Maniar. Plaintiffs' motion for partial summary judgment on their IMWL claims is also denied.

    c. **The Illinois Wage Protection and Collection Act**

The defendants do not address plaintiff's IWPCA allegations in their motion for summary judgment.[9] The Court need not make arguments on defendants' behalf, and so will only note that the requisite showing for liability under the IWPCA is *not* the same as what is required by the FLSA and IMWL. The IWPCA "does not provide an independent right to payment of wages and

---

[9] In fairness to defendants, plaintiffs merely state in their complaint that the lawsuit arises under the IWPCA and that the parties are "employees" and "employers" as defined by the statute. Compl. ¶¶ 1, 4, 9. They did not, however, separately plead a count for violations of the IWPCA (and were not required to do so; a complaint need not allege legal theories).

benefits; instead, it only enforces the terms of an existing contract or agreement." *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658 (N.D. Ill. 2012); *see* 820 Ill. Comp. Stat. 115/2 (defining "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement"). Thus, to plausibly allege a violation of the IWPCA, an individual "must plead that [some amount of] compensation is due to him or her . . . under an employment contract or . . . agreement." *Wharton*, 912 F. Supp. 2d at 658 (quotation marks omitted). *See also*, *e.g.*, *Gallardo v. Scott Byron & Co.*, No. 12-cv-07202, 2014 WL 126085, at *14 (N.D. Ill. Jan. 14, 2014) ("A violation of the FLSA or the IMWL alone, without a corresponding violation of an employment contract or agreement … cannot establish a violation of the IWPCA"); *Jaworski*, 2013 WL 1283534, at *8 ("[T]he IWPCA test for determining whether a worker is an employee is entirely different than the FLSA/IMWL test."). Even if defendants had prevailed on their motion for summary judgment as to plaintiffs' FLSA and IMWL claims, they would still need to convince the Court that there were no genuine issues of material fact, and that they were entitled to summary judgment as a matter of law on plaintiffs' IWPCA claims.

\* \* \*

For the reasons set forth above, the Court denies plaintiffs' partial motion for summary judgment. The Court grants defendants' motion for summary judgment as to all claims against defendant Maniar, but denies it as to all the claims against defendants Com2 and Baluch. The claims against Round 2 are dismissed pursuant to Rule 4(m).

Date: September 30, 2024

John J. Tharp, Jr.
United States District Judge